UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICTOR MALLH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SHOWTIME NETWORKS INC.,<br><br>Defendant. | No. _____<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF CONTRACT, CONSUMER FRAUD, AND UNUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Victor Mallh ("Plaintiff"), individually and on behalf of all others similarly situated, by his undersigned counsel, alleges the following upon personal knowledge as to his own acts and upon information and belief based upon the investigation conducted by counsel as to all other matters.

## NATURE OF THE ACTION

1. This is a class action on behalf of all consumers who purchased the August 26, 2017 boxing match (the "Event") between Floyd Mayweather, Jr. and Conor McGregor for viewing from defendant Showtime Networks, Inc. ("Showtime") on www.showtimeppv.com or through any other media, app or website. As a result of server failure or other technical failures on Defendant's part, Plaintiff and the Class were unable to view substantial portions of the Event, and some Class members were unable to view the entire Event.

## THE PARTIES

2. Plaintiff is a resident and citizen of the State of New York. Plaintiff paid $99.95, the standard price that was charged to all Class members, to view the Event as a live stream on www.showtimeppv.com. Plaintiff was not able to view a substantial portion of the Event.

Defendant's service continually logged Plaintiff out and, during times that Plaintiff was able to watch, the pictures were delayed, cutting out, or otherwise incomplete. Plaintiff attempted to obtain a refund, but Defendant made the process unreasonably difficult and Plaintiff has not received a refund.

3. Defendant Showtime Networks Inc. is a Delaware corporation with headquarters in New York, New York. Showtime is a subsidiary of media conglomerate CBS Corporation that owns CBS's premium cable television channels including the Showtime network. Through that Network, Defendant offered the Event.

## JURISDICTION AND VENUE

4. This Court has diversity jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1332(d), in that the aggregate claims of Plaintiff and members of the Class exceed the sum or value of $5,000,000, and diversity of citizenship exists between at least one member of the proposed Class and defendant. On information and belief, the class consists of millions of members.

5. Venue is proper in this District because a substantial part of the events and omissions giving rise to the claim occurred in this District, including the marketing, distribution and sale of access to the Event.

## SUBSTANTIVE ALLEGATIONS

6. On August, 26, 2017, the Event took place in Las Vegas, Nevada.

7. The Event was a subject of constant promotion on television networks and on the internet.

8. In a July 31, 2017 article, www.mmamania.com stated that Showtime had released its first TV commercial for the Event. According to that article,

> In order to convince us to buy the fight, Showtime has its first 30 second TV spot for Mayweather vs. McGregor and it's pretty pimped out. Floyd and Conor emerge from some kind of fantastical structure so laden with gold that everything is bathed in a soft yellow light. "Money" Mayweather's backdrop is decorated with lions and dollar signs. McGregor's has castles and Irish flags. Stacks of cash and gold bullion are scattered everywhere. We imagine this portrays them after the fight happens.
>
> But again, it only happens if you buy into the hype and into the pay-per-view, which costs $99.95 (or £19.95 if you're lucky enough to live in the UK).

9.  The advertisement, which bears the "Showtime" logo in the bottom right hand corner throughout its duration, says in all-capital gold letters "two kings collide," and "one will reign." At the end, the advertisement has a "Showtime PPV" logo among others, making it clear that the event can be viewed on Showtime PPV. Showtime also ran online advertisements for the event which made clear that the Event could be purchased for viewing from Showtime.

10. Countless online articles announced that the Event could be streamed through "Showtime PPV online" and the "Showtime PPV App."

11. On the night of the Event, Defendant failed to provide the Event in its entirety.

12. According to an article titled *McGregor-Mayweather Viewing Problems Have Fans Fighting Mad*, Showtime faced "problems due to overwhelming demand."

13. First, the Event was delayed as Showtime attempted to fix the problems that were preventing the Class members from watching the Event.

14. Then, Showtime issued a sanitized and misleading announcement. "Due to high demand, we have reports of scattered outages from various cable and satellite provides and the online offering," Showtime Sports said in a statement. "We will delay the start of the main event slightly to allow for systems to get on track. We do not expect a lengthy delay."

15. However, that announcement underplayed the chaos that was taking place for fans who had paid $99.95 to view the Event and were unable to do so. As of August

3

28, 2017, Showtime's support account on Twitter, @sho_help, was overwhelmed with hundreds of inquiries about refunds for the unviewable Event.

16. One Twitter user stated, "My computer has been spinning for 2 hours now. I should have put money on not being able to watch this fight."

17. The day after the Event, another Twitter user posted a query to @sho_help saying "I . . . need some help with this. I was charged and was unable to watch the fight."

18. These complaints are among the hundreds, or thousands, of complaints that appeared on Twitter and on various message internet message and complaint boards during and after the Event.

## CLASS ACTION ALLEGATIONS

19. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a), (b)(1) and (b)(3) on behalf of the following consumer class and sub-class:

**The Class:**

All persons in the United States who purchased the Event, from Defendant, for viewing through Showtime PPV or in any other media. Excluded from the Class are Defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

**The Sub-Class:**

All persons in New York who purchased the Event, from Defendant, for viewing through Showtime PPV or in any other media. Excluded from the Sub-Class are Defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

20. Members of the Class are so numerous that joinder of all members would be impracticable.  Plaintiff estimates that there are millions of members of the Class.

21. Questions of law and fact are common to all the members of the Class that predominate over any questions affecting only individual members, including:

    a. Whether Defendant entered into contracts with Plaintiff and the Class;

    b. Whether Defendant breached its contracts with Plaintiff and the Class;

    c. Whether Defendant's conduct in connection with the sale of the right to view the Event was deceptive;

    d. Whether Defendant's advertisements were false in connection with the sale of the right to view the Event;

    e. Whether Defendant was unjustly enriched;

    f. The amount by which Plaintiff and the Class were damaged.

22. The claims of Plaintiff are typical of the claims of the members of the Class. Plaintiff has no interests antagonistic to those of the Class, and Showtime has no defenses unique to the Plaintiff.

23. Plaintiff will protect the interests of the Class fairly and adequately, and Plaintiff has retained attorneys experienced in complex class action litigation.

24. A class action is superior to all other available methods for this controversy because:

    a. The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

b.	The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for defendant;

c.	Defendant acted or refused to act on grounds generally applicable to the Class; and questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## COUNT I
**(Breach of Contract)**

25.	Plaintiff incorporates and re-alleges all of the foregoing paragraphs.

26.	Plaintiff and the Class entered into a contracts with defendant to view the Event.

27.	Defendant breached the contract by failing to provide a viewing of the Event.

28.	As a result of defendant's breach of contract, Plaintiff and the other members of the Class were damaged.


## COUNT II
**(Consumer Fraud and/or Unconscionable or Unfair Practices)**

29. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

30. Plaintiff, and the members the Class, purchased the Event for viewing from Defendant.

31. In connection with this purchase, Defendant engaged in deceptive, unconscionable and/or unfair business practices by failing to provide a full viewing of the Event and/or failing to refund the monies paid by Plaintiff and the Class to view the Event.

32. Plaintiff and the Class were harmed by Defendant's deceptive, unconscionable, and/or unfair business practices in amounts to be determined at trial. Plaintiff and the Class are entitled to, among other things, compensatory damages, statutory damages and penalties, and punitive damages.

## COUNT III
**(Violation of the New York General Business Law §349)**

33. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

34. At all times relevant herein, the New York General Business Law ("GBL") was in effect. GBL §349 prohibits misleading, consumer-oriented business acts that cause injury to the Plaintiff.

35. Defendant was and is doing business in the State of New York and thus is subject to New York law for the incidents described in this action.

36. Defendant's deceptive practices have caused consumers, including Plaintiff, to purchase the Event.

37. Defendant's acts and omissions of material fact in selling the Event were misleading.

38. As a result of defendant's acts, Plaintiff and the Class were damaged when they paid to watch the Event and were unable to do so.

## COUNT IV
### (Violation of New York GBL §350)

39. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

40. At all times relevant herein, the New York General Business Law was in effect. GBL §350 prohibits misleading advertisements in connection with sale of goods or services. The deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances.

41. Defendant was and is doing business in the State of New York and thus is subject to New York law for the incidents described in this action.

42. Defendant's advertisements were false and misleading and thus defendant has violated GBL §350.

43. Plaintiff and the other members of the Class have been injured by defendant's false advertising.

## COUNT V
### (Unust Enrichment)

44. Plaintiff incorporates and re-alleges all of the foregoing paragraphs as if fully set forth herein.

45. By the conduct alleged herein, Defendant enriched itself at the expense of Plaintiff and the Class in an amount, estimated by the Whistleblower Complaint, to be "many millions of dollars."

46. Equity and good conscience militate against permitting Defendant to retain the benefits of its practices, since those benefits were obtained by intentionally overcharging Plaintiff and the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A. Certify this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, appoint Plaintiff as the Class representative, and appoint the undersigned as Class counsel;

B. Order Defendant to pay Plaintiff and other members of the Class all actual, consequential, statutory and/or treble damages in an amount to be determined at trial, including restitution interest and disgorgement of all amounts paid by Plaintiff and other members of the Class to Defendant for the unviewable Event, as well as any applicable interest;

C. Issue an order granting Plaintiff's reasonable costs, expenses and attorney's fees including expert fees; and

D. Grant in favor of Plaintiff and the Class such other relief as may be just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and the Class, hereby demands a trial by jury.

DATED:  August 28, 2017  **GARDY & NOTIS, LLP**

By: *s/ Orin Kurtz*
Mark C. Gardy
Orin Kurtz
Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022
Tel: 212-905-0509
Fax: 212-905-0508

*Attorneys for Plaintiff*