```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
VICTOR MALLH, individually and on        :
behalf of all others similarly           :     17cv6549(DLC)
situated,                                :
                                         :     OPINION & ORDER
                         Plaintiff,      :
             -v-                         :
                                         :
SHOWTIME NETWORKS INC.,                  :
                                         :
                         Defendant.      :
                                         :
---------------------------------------- X
```

APPEARANCES

For Victor Mallh:
Mark C. Gardy
Orin Kurtz
Gardy & Notis, LLP
Tower 56
126 East 56th Street, 8th Floor
New York, New York 10022

For Showtime Networks Inc.:
Yehudah L. Buchweitz
Eric S. Hochstadt
Jessie B. Mishkin
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153

DENISE COTE, District Judge:

　　　This case involves a contract dispute between plaintiff Victor Mallh ("Mallh") and defendant Showtime Networks Inc. ("Showtime") arising out of Showtime's streaming of an August 26, 2017 boxing match between Floyd Mayweather, Jr. and Conor McGregor (the "Event"). Mallh alleges in this putative class

action that he purchased a live stream of the Event from Showtime but was unable to view substantial portions of it due to technical failures.  Showtime has moved to compel arbitration, or in the alternative, to dismiss the complaint in part and/or to strike the class allegations.  For the following reasons, Showtime's motion to compel arbitration is granted.

## Background

The following facts are taken from the complaint and the evidence described below that was submitted in connection with Showtime's motion to compel arbitration.  This Opinion summarizes only those facts relevant to the instant motion.

Showtime is an entertainment company that owns and operates a commercial-free premium television program service.  Showtime also offers events to consumers live on a pay-per-view basis.

On August 26, 2017, Mallh paid $99.95 to view the Event as a live stream via www.showtimeppv.com (the "Website").  To purchase the live stream, Mallh -- like all users of Showtime's website streaming service -- had to agree to Showtime's terms of use ("TOU").

Specifically, every person who purchased the live stream through the Website had to take certain steps.  First, users needed to access a webpage describing the Event.  The page had a

black background, included large photos of the boxers and promotional material, and described a schedule of events leading up to the Event in small white and blue text.  To purchase the live stream, users were required to click on a bright red box towards the top of the page containing the following language in white text: "BUY LIVE PPV EVENT - $99.95."  (Emphasis in original.)  At that point, users were transferred to a purchase page.

The purchase page was uncluttered and dedicated to the steps required to transact the purchase.  It did not contain any photos or links to promotional material.  The purchase page had a black background and, towards the top, users saw the words "PURCHASE PAY-PER-VIEW" in large white text.  (Emphasis in original.)  Below that text were the date and time of the Event in smaller white text.  Below the description of the Event was small white text that read: "Purchase is solely for viewing at showtimeppv.com on <u>supported browsers</u>."  (Emphasis in original.)  Below this text were white boxes that purchasers were required to fill with their email address, credit card, and billing address information.  A smaller white box appeared just below these white boxes.  The following language appeared in small grey text next to that white box: "I have read and agree to the <u>Terms of Use</u>, <u>Privacy Policy</u>, and <u>Video Services Policy</u>.  I

3

agree to receive updates, alerts and promotions from Showtime." (Emphasis in original.)  Clicking on the hyperlinked words "Terms of Use" took users to a page containing the complete TOU. Two short footnotes appeared below the small white box.[1]  Below the two footnotes was a large red box containing the words "CONFIRM PURCHASE" in white text.  (Emphasis in original.)

To complete the purchase, users were required to check both the small white box indicating that they had read and agreed to the TOU and the larger red box.  Users who clicked on both boxes then saw an order confirmation page with a black background. Towards the top were the words "ORDER CONFIRMATION" in large white text.  (Emphasis in original.)  The page also displayed an order number and repeated the date and time of the Event in smaller white text.[2]

The TOU contained the following arbitration clause and class action waiver:

> 18. Disputes; Arbitration

---

[1]  The footnotes indicated that "[o]ther restrictions and taxes may apply" and "[p]ay-per-view purchase is for residential use only.  One live stream per pay-per-view purchase.  Streaming quality depends on your network connection."

[2]  Users who purchased the Event after it had already started saw a similar set of pages and were required to complete a similar series of steps.  The pages seen by these users incorporated minor changes to reflect that the Fight was already in progress. In both cases, purchasers of the Event were required to click on a small white box indicating that they had read and agreed to the TOU and a larger red box to confirm the purchase.

>If you have any dispute with or claim against us or any of our affiliates (a "Claim") arising out of or relating to the Services or these Terms, and the claim is not resolved by calling our customer service department at (877)4-SHOWTIME ((877)474-6984), <u>you and we each agree to resolve such disputes through an individual binding arbitration or an individual action in small claims court.</u>  <u>Class arbitrations and class actions are not permitted</u>, and your Claim may not be consolidated with any other person's claim.  You and we agree that the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision, and that you and <u>we are each waiving the right</u> to a trial by jury or <u>to participate in a class action</u>.  This Section 18 shall survive termination of these Terms or any subscription that you may have to any of the Services.
>
>Before you commence an arbitration or file a small claims court action with respect to your Claim, you must first send to Provider a written notice of your claim ("Notice").  The Notice must (1) be sent by certified mail; (2) be addressed to: Showtime Networks Inc., 1633 Broadway, New York, NY 10019, Attn: Legal Department; (3) describe the nature of your Claim; and (4) specify the damages or other relief you seek.  If we and you do not then resolve the Claim within 30 days after our receipt of your Notice is received, either you or we may commence an arbitration or file a small claims court action to resolve the Claim.[3]
>
>Any such arbitration shall be administered by the American Arbitration Association and be conducted in accordance with its Commercial Arbitration Rules, including the Consumer-Related Disputes Supplementary Procedures, if applicable (the "Rules").  Contact information for the American Arbitration Association, as well as copies of the Rules and applicable forms, are available at http://www.adr.org.  In circumstances in which the Rules provide for an in-person hearing, such hearing will, at your request, take place in the

---

[3] Showtime also argues that this case should be dismissed because Mallh fails to allege that he supplied written notice as required above.

> U.S. county (or parish) of your residence, or
> otherwise in Los Angeles, California.  For any non-
> frivolous Claim that does not exceed $50,000, Provider
> will pay all costs of the arbitration, and reimburse
> any filing fees you may be required to pay.  If the
> arbitrator awards you damages that are greater than
> Provider's last written settlement offer communicated
> before commencement of the arbitration, Provider will
> pay you the greater of $1,000 or the amount of the
> award.

(Emphasis supplied.)  In addition, the TOU contains a choice of law provision selecting California law.

Mallh contends that he did not realize that by signing up to watch the Event he was being asked to submit claims against Showtime to arbitration on an individual, non-class basis.  He asserts that he was unable to watch a substantial portion of the Event because Showtime's service continually logged him out.  During the periods in which he was able to watch the Event, the pictures were delayed, cutting out, or otherwise incomplete.  Mallh asserts further that he has tried to obtain a refund but has not succeeded.

Mallh filed this putative class action on August 28, 2017, and asserts claims for breach of contract, consumer fraud and/or unconscionable or unfair practices, violations of New York General Business Law §§ 349 and 350, and unjust enrichment.  The complaint asserts subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

6

On October 11, Showtime moved to compel arbitration or, in the alternative, to dismiss the complaint in part and/or to strike the class allegations.  Mallh opposed Showtime's motion to compel arbitration on October 27.[4]  The motion became fully submitted on November 3.

## Discussion

When deciding motions to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment."  Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted).  On a motion for summary judgment, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," and draw all reasonable inferences in favor of the non-moving party.  Id. (citation omitted).  "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings."  Id. (citation omitted).

Under Section 2 of the Federal Arbitration Act ("FAA")

---

[4]  An Order of October 12 stayed briefing on Showtime's motion to dismiss and to strike the class allegations.

> a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  The FAA was enacted in response to "widespread judicial hostility to arbitration."  Am. Exp. Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2308-09 (2013).  The Supreme Court has emphasized that the FAA declares a national policy favoring arbitration and courts must "rigorously enforce arbitration agreements according to their terms."  Id. at 2309 (citation omitted).  See also Nitro-Lift Technologies, L.L.C. v. Howard, 568 U.S. 17, 20 (2012); Citigroup, Inc. v. Abu Dhabi Inv. Auth., 776 F.3d 126, 129 (2d Cir. 2015).  Consistent with this policy, "[a] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid."  Harrington v. Atlantic Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010). Courts routinely enforce agreements to arbitrate within the context of putative class actions.  See, e.g., Am. Exp., 133 S. Ct. at 2311; Meyer, 868 F.3d at 70.

Courts must decide whether parties have agreed to arbitrate "unless the parties clearly and unmistakably provide otherwise." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016).

8

The existence of an agreement to arbitrate is a question of state law.  Meyer, 868 F.3d at 73-74.  Under California law, an agreement to arbitrate exists where there is "reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms."  Id. at 75 (citation omitted) (applying California law).

"Courts around the country have recognized that an electronic click can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement."  Id. (citation omitted).  Web-based contracts are characterized on the basis of how a user manifests assent.  Clickwrap agreements require users to affirmatively click an "I agree" box after being presented with terms of use.  Browsewrap agreements generally post terms and conditions on a website via a hyperlink at the bottom of the screen and do not require the user to click on an "I agree" box.  Id.  Courts routinely uphold clickwrap agreements "for the principal reason that the user has affirmatively assented to the terms of agreement by clicking 'I agree.'"  Id.

It is undisputed that access to the Event was provided to the plaintiff through the defendant's website, and that his purchase of the live stream of the Event required him to click

on a box indicating that he had read and agreed to the TOU.  The TOU contained an arbitration provision and class action waiver requiring the plaintiff to arbitrate his disputes with the defendant on an individual basis or file an individual action in small claims court.  The agreement to arbitrate and class action waiver were reasonably conspicuous and the plaintiff's click gave his unambiguous consent to those agreements.

Mallh does not dispute that he checked a box indicating that he had read and agreed to the TOU.  Nor do the parties dispute that the TOU contains an arbitration clause and class action waiver that covers Mallh's claims.  Mallh argues principally that the Website did not give him sufficient notice of the arbitration clause and the waiver of his rights to pursue a class action.  Mallh emphasizes his lack of notice of the class action waiver in his submission, and refers to the arbitration clause and the class action waiver together as the "Class Waiver."

Specifically, Mallh argues that he did not have adequate notice of the obligation to arbitrate disputes with Showtime on an individual basis because of the following: (1) The Website is cluttered and, as a result, the arbitration clause and class action waiver are "buried" behind three hyperlinks; (2) The hyperlinks to the TOU, Privacy Policy, and Video Services Policy

10

are in grey text and hard to see against the black background of the Website; (3) He was compelled to check a single box at the point of purchase indicating his agreement with four different policies; (4) The arbitration clause and class action waiver do not appear until the fifteenth page of the TOU; and (5) The text of the arbitration clause and, in particular, the class action waiver are no more conspicuous than any other paragraph of the TOU.[5]

These arguments are unavailing. The Website is not cluttered. The purchase page is neatly organized and requires the user to supply a limited amount of information in order to complete the purchase.[6] It does not contain photos, links to promotional materials, or other extraneous material.

Nor are the arbitration clause and class action waiver

---

[5] Mallh also challenges the "authenticity or admissibility" of the TOU supplied by Showtime because one page of the user flow screens that Showtime submitted in support of its motion contained "nonsensical descriptions" of the Event including "Lorem Ipsum dolor sit. Short description here to give some idea of what's happening." This argument lacks merit. The language was "placeholder language" that was never visible to users, and did not affect, in any event, the purchase page or the TOU.

[6] Mallh's reliance on Nicosia to suggest the Website is too cluttered to provide adequate notice is misplaced. The agreement at issue in Nicosia was not a clickwrap agreement. Moreover, among other things, the order page in that case involved "between fifteen and twenty-five links . . . alongside multiple buttons and promotional advertisements." Nicosia, 834 F.3d at 237.

buried behind the hyperlinks.  They appear in the hyperlinked TOU, which is the first linked document.[7]  While the grey text of the titles to the hyperlinked documents is smaller than other text on the page, the titles are underlined and clearly visible against the black background of the Website.

As described in Meyer, the fact that the TOU was available only by hyperlink does not preclude a finding that the arbitration clause and class action waiver were reasonably conspicuous.  Id. at 78.  "Clicking a hyperlinked phrase is the twenty-first century equivalent of turning over the cruise ticket.  In both cases, the consumer is prompted to examine terms of sale that are located somewhere else."  Id. (citation omitted).  Moreover, the "I have read and agree to" language clearly prompts users to review the TOU, and a purchase may not be effected without clicking that acknowledgment.

Once a user accesses the TOU, the arbitration clause and class action waiver are reasonably conspicuous.  They are contained in a separate section entitled "Disputes; Arbitration" that extends over three paragraphs.  Under these circumstances, a purchaser of the Event would be on reasonably conspicuous

---

[7]  Mallh's declaration only suggests that "it is possible" that he was distracted by the "I agree to receive updates, alerts and promotions from Showtime" language and "may not" have realized that the preceding hyperlinks related to anything other than receiving advertisements from Showtime.

notice of the arbitration clause and class action waiver.

Mallh's manifestation of assent is also unambiguous as a matter of law. Mallh does not dispute that he affirmatively clicked on a box agreeing to the TOU. Because notice of the arbitration clause and class action waiver was reasonably conspicuous and Mallh unambiguously manifested assent, Showtime's motion to compel arbitration is granted.

## Conclusion

Showtime's October 11 motion to compel arbitration is granted. This action is stayed pending the outcome of arbitration proceedings.

Dated:  New York, New York
        November 7, 2017

_____
DENISE COTE
United States District Judge